IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JAMES ROWSEY, 34458                                                    PLAINTIFF

versus                                        CIVIL ACTION NO. 2:10cv109-MTP

REGINA HANCOCK, et al.                                            DEFENDANTS

## OPINION AND ORDER

THIS MATTER is before the Court on the Motion for Summary Judgment [45] filed by

Defendants.  The Court, having considered the submissions of the parties and the applicable law,

finds the Motion [45] should be GRANTED.

### FACTUAL BACKGROUND

Plaintiff, James Rowsey, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1]

pursuant to 42 U.S.C. § 1983 on May 10, 2010.  Plaintiff is currently serving a life sentence at the

South Mississippi Correctional Institution ("SMCI") after having been convicted of

homicide/murder in Panola County.  Through his complaint, and as clarified in his *Spears*[1]

hearing, Plaintiff alleges that his legal mail was opened outside his presence during a shakedown

on May 12, 2009, in violation of Mississippi Department of Corrections ("MDOC") policy and his

constitutional rights.  *See* Scheduling and Case Management Order [35].  Plaintiff testified none

of the named Defendants actually opened his legal mail, but that Ronald King and Regina

Hancock were present during the shakedown and knew the manner in which it was being

conducted.  *Id.*  Plaintiff further alleges Defendants King, Hancock, and Epps were the

respondents to his grievances filed through the Administrative Remedy Program ("ARP")

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  Plaintiff's *Spears* hearing occurred on
December 8, 2010.

regarding this claim and failed to grant him any relief, and that Defendant Epps waits too long to respond to ARP grievances, which violates MDOC policy and causes him prejudice. *Id.* Finally, Plaintiff claims he received improper and/or false Rule Violations Reports ("RVR's") regarding him being in a trash compactor and throwing hot water in another inmate's face. *Id.* He claims the Defendants were not directly involved in the issuance of the RVR's, but that Defendant King is "over the prison" so he is responsible for the guards' actions.[2] *Id.*

## STANDARD FOR SUMMARY JUDGMENT

This Court may grant summary judgment only if, viewing the facts in a light most favorable to Plaintiff, Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the

---

[2]Plaintiff also referenced a retaliation and a property deprivation claim. However, he testified that neither of the claims were against a named Defendant in this action; therefore, the Court held that these claims would not go forward. *See* Scheduling and Case Management Order [35].

presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts.  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the Court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id.* at 683 (quoting 42 U.S.C. § 1983).

<u>Opening of Legal Mail</u>

A prison official's intentional withholding of mail intended for the courts may constitute a cognizable claim under § 1983, where it is also alleged that the intentional delay damaged the prisoner's legal position.  *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1986); *see also Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993) (holding that in order to have a cognizable claim under § 1983, an inmate must show that "his position as a litigant was prejudiced" by the unauthorized opening of his legal mail); *Biliski v. Harborth*, 55

F.3d 160, 162-63 (5th Cir. 1995) (affirming dismissal of § 1983 claims as frivolous, including claims for denial of access to the courts and for the destruction and/or delay of mail where plaintiff failed to allege how he had been prejudiced).  However, the violation of a prison regulation that requires a prisoner's presence when incoming legal mail is opened and inspected does not implicate constitutional concerns. *See Brewer v. Wilkinson*, 3 F.3d 816, 820, 825 (5th Cir.1993).  Similarly, the mere allegation that legal mail was opened outside a prisoner's presence, but not censored, does not give rise to a cognizable free speech claim as prisons have a "legitimate security interest in opening and inspecting incoming mail for contraband."  *Walker*, 4 F.3d at 413.

As mentioned previously, Plaintiff claims his constitutional rights were violated when prison officials allegedly opened his legal mail outside his presence during a shakedown on May 12, 2009.[3]  *See* Scheduling and Case Management Order [35].  However, the Court finds the Plaintiff fails to show the alleged opening of his legal mail has prejudiced his position as a litigant in any way.  *See Walker*, 4 F.3d 410 at 413.  At his *Spears* hearing, Plaintiff originally testified that, as a result of the May 12, 2009, shakedown, he lost legal documents relating to litigation that was dismissed in April 2008.  He further alleged he lost a legal document the court clerk directed him to refile because he filed his Response to Order [30][4] unsigned and without a signed

---

[3]The fact that the alleged opening of Plaintiff's legal mail outside his presence may violate MDOC policy is irrelevant to a § 1983 claim.  *See Brewer*, 3 F.3d at 820, 825. Furthermore, Plaintiff did not claim his mail was censored when it was allegedly opened during the May 12 shakedown, therefore, he has no cognizable free speech claim.  *See Walker*, 4 F.3d at 413.

[4]Plaintiff filed his Response to Order [30] in order to show his dissatisfaction with this Court's Order [25], in which the Court added the certificate and other ARP documents for ARP #SMCI-10-496 to the record, and consequently denied Plaintiff's Motion [23] for Judicial

certificate of service.  However, upon further questioning, Plaintiff lamented he could not identify

with certainty any documents that he lost as a result of the alleged opening of his legal mail during

the May 12, 2009, shakedown.  Plaintiff simply has not established that he was prejudiced in any

way nor has he established that he lost *any* legal documents.  Moreover, he clearly was not

prejudiced by the alleged loss of legal documents relating to litigation that was dismissed more

than a year before the shakedown even occurred or by losing a legal document relating to the

refiling of an unnecessary Response [30], which was nevertheless received and docketed, to an

Order [25] denying a moot Motion [23].  *See supra* note 4.

Furthermore, it is well-settled that Section 1983 does not "create supervisory or

*respondeat superior* liability."  *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also*

*Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983,

supervisory officials cannot be held liable for the actions of subordinates under any theory of

vicarious liability.").  "To state a cause of action under § 1983, the plaintiff must allege facts

reflecting the defendants' participation in the alleged wrong, specifying the personal involvement

of each defendant."  *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v.*

*Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).  Thus, supervisory prison officials may be held liable

for a Section 1983 violation only if they either were personally involved in the constitutional

deprivation or if there is a "sufficient causal connection between the supervisor's wrongful

conduct and the constitutional violation."  *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983

suits, a plaintiff must plead that each Government-official defendant, through the official's own

---

Review of ARP #SMCI-10-496 as moot.

individual actions, has violated the Constitution.").

Plaintiff testified Defendants King and Hancock were periodically present while the May 12, 2009, shakedown was occurring. *See* Scheduling and Case Management Order [35]. He also alleged that Defendant King is in charge of SMCI and knew the manner in which the shakedown was being conducted. *Id.* However, Plaintiff failed to specify the "personal involvement of each [D]efendant" necessary to hold a supervisory official liable under § 1983. *Jolly*, 923 F. Supp. at 943. In fact, Plaintiff freely admitted the named Defendants, who are supervisory officials, did not actually open his legal mail and were not personally involved in the shakedown. Accordingly, Defendants Epps, King, and Hancock cannot be held liable for any alleged deprivation of his constitutional rights that resulted therefrom. Thus, Plaintiff has failed to state a cause of action under § 1983 against any named Defendant. *See, e.g.*, *Iqbal*, 129 S. Ct. at 1948.

Based on the foregoing, Defendants Epps, King, and Hancock are entitled to judgment as a matter of law on Plaintiff's claim that his constitutional rights were violated by the opening of his legal mail outside his presence.

<u>Due Process Violation in the ARP</u>

Based on his belief that his legal mail was opened outside of his presence in violation of his constitutional rights, Plaintiff filed a grievance through the ARP. *See* Scheduling and Case Management Order [35]. This grievance was investigated and denied by Defendants Hancock, King, and Epps respectively. *See* Exh. B to Memorandum in Support of Motion for Summary Judgment [46]. Plaintiff claims Defendants violated his due process rights by failing to adequately investigate his grievance and grant him any relief. *See* Scheduling and Case Management Order [35]. Plaintiff further claims Defendant Epps violated MDOC policy by

6

taking more than 40 days to respond to grievances filed through the ARP, and that this delay caused him prejudice.

The Court finds Plaintiff's claims are without merit as it appears he was actually afforded more opportunities to resolve his grievances than the Constitution requires.  First, Plaintiff's claim clearly fails under § 1983 as he does not have a constitutional right to a grievance procedure, and has no due process liberty interest right to having his grievance resolved to his satisfaction. *See, e.g.*, *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005).  Furthermore, even if Plaintiff's claim that Defendants failed to adequately investigate his grievance were true, it is indisputably without merit in the § 1983 context.  *Geiger*, 404 F.3d at 374; *see also Dehghani v. Vogelgesang*, 226 F. App'x. 404, 406 (5th Cir. 2007) (holding that plaintiff's allegation that warden failed to adequately investigate his grievance did not amount to a constitutional violation); *Woodland v. City of Vicksburg*, No. 5:05cv85-DCB-JCS, 2006 WL 3375256, at *3 (S.D. Miss. Nov. 21, 2006) (stating that claim for "failure to investigate" did not amount to a constitutional violation). Finally, Defendant Epps' failure to respond to Plaintiff's grievance in the time required by MDOC regulations is irrelevant as the failure of a prison official to follow a prison's regulations or policies does not amount to a constitutional violation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986).

Based on the foregoing, Defendants Epps, King, and Hancock are entitled to judgment as a matter of law on Plaintiff's claim that his constitutional rights were violated by the Defendants' failure to timely investigate his ARP claim and grant him relief.

Improper or False Rule Violations Reports

Plaintiff's final claim is that he received improper/false RVR's regarding him being in a

trash compactor and throwing hot water in another inmate's face.  *See* Scheduling and Case

Management Order [35].  He testified that none of the named Defendants issued the RVR's, but

that Defendant King is "over the prison", which makes him responsible for their issuance.  *Id.*

Plaintiff stated  he received the RVR relating to him being in a trash compactor while he was

performing his job at the prison.  He stated the RVR was improper because it resulted from an

incident where a guard found him in a trash dumpster, not the compactor.  Plaintiff testified this

distinction was important because he was authorized to be in the trash dumpster while he was

working, but the trash compactor was located in a different area where he was not authorized to

be.  He claims he suffered prejudice because the issuance of the RVR resulted in his prison job

being terminated and him being moved to a different unit in the prison, which prevented him from

receiving declarations from other prisoners relating to his legal mail claim. As to Plaintiff's claim

that he received a false/improper RVR for throwing hot water in another inmate's face, Plaintiff

admitted he did so, and failed to show that he was prejudiced in anyway as a result of the issuance

of the RVR.

To invoke the protections of the Due Process Clause, Plaintiff must have a protected

liberty interest at stake. A constitutionally-protected liberty interest is "limited to freedom from

restraint which . . . imposes atypical and significant hardships on the inmate in relation to the

ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The fact that

Plaintiff lost his prison job as a result of the issuance of the RVR is not an "atypical and

significant hardship" of prison life.  *See Bulger v. United States*, 65 F.3d 48, 50 (5th Cir. 1995)

(holding that the loss of a prison job did not implicate the prisoner's liberty interest even though the prisoner lost the ability to automatically accrue good-time credits).  Moreover, Plaintiff does not have a constitutionally-protected interest in where he is housed in the prison as the protections afforded by the Due Process Clause do not extend to "every change in the conditions of confinement" which are adverse to a prisoner.  *Madison v. Parker*, 104 F.3d 765, 767-68 (5th Cir. 1997) (inmate's 30 day commissary and cell restrictions as punishment do not present the type of atypical, significant deprivation in which a state might create a liberty interest); *see also Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (a prison inmate does not have a protectable liberty interest in his custodial classification).

Finally, Plaintiff testified none of the named Defendants issued the RVR's, but that Defendant King is responsible for the guard's actions as he is "over the prison."  As mentioned previously, vicarious liability is not applicable in a § 1983 action.  *See Iqbal*, 129 S. Ct. at 1948. Thus, even if Plaintiff's constitutional rights had been violated by the guards issuing the RVR's, Defendants, including Defendant King, would not be liable.  *Id.* As such, the Court finds that Plaintiff has failed to state a viable claim under § 1983.

Based on the foregoing, Defendants Epps, King, and Hancock are entitled to judgment as a matter of law on Plaintiff's claim that his constitutional rights were violated by the Defendants by the issuance of improper or false RVR's.

Because the Court finds Plaintiff's claims do not amount to any constitutional violation, it declines to address the issue of qualified immunity.

## CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion for Summary

9

Judgment [45] should be granted.  Accordingly,

IT IS, THEREFORE, ORDERED that Defendants' Motion for Summary Judgment [45] is GRANTED and that this action is dismissed with prejudice.  A separate order in accordance with Fed. R. Civ. P. 58 will be entered.

SO ORDERED this the 7th day of July, 2011.

s/ Michael T. Parker
United States Magistrate Judge